IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DON ABREU,

      Plaintiff,

Vs.                                  No. CIV-03-1468 RB/RHS

MORA-SAN MIGUEL ELECTRIC
COOPERATIVE, INC., MORA COUNTY
SHERIFF'S OFFICE, FOURTH JUDICIAL
DISTRICT ATTORNEYS OFFICE, LUCERO
PROFESSIONAL SERVICES, LTD., CARL
ARMIJO, in his official and individual capacity,
ERNESTO GONZALES, LEVI ALCON, AND YVETTE ALCON,

      Defendants.

DEFENDANT MORA-SAN MIGUEL ELECTRIC COOPERATIVE, INC.'S
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO
COUNTS I, II, III, IV, V, X, XI AND XII OF PLAINTIFF'S COMPLAINT

In support of its Motion for Summary Judgment as to Counts I, II, III, IV,

V, X, XI and XII of Plaintiff's Complaint, Defendant Coop states as follows:

I.      Statement of Material Facts

For purposes of this Motion for Summary Judgment only, the following facts

are not disputed:

      1.      Plaintiff began employment with Defendant Coop in 1977.  See

          Complaint, para. 15.

      2.      Defendant Coop maintains a policy by which its non-union, non-

          probationary employees may only be terminated for cause.  See

          Exhibit A, Board Policy 213, Termination, para. 1.

3.     On April 14, 2003 Plaintiff learned that the Coop's compressor was missing.  <u>See</u> Exhibit B, Deposition of Plaintiff Don Abreu, p. 59, l. 6-9.

4.     The theft was reported to the Mora County Sheriff's Department who began investigating the matter on April 14, 2003.  <u>See</u> Exhibit B, p. 59, l. 15-25; p. 60, l. 1-4.

5.     On August 5, 2003 Plaintiff was advised by Defendant Coop that it was proposed that he be terminated for cause.  The cause for termination was Defendant Coop's belief that Plaintiff was involved in the theft of the compressor.  Plaintiff was advised that he had the right to request a pre-termination hearing.  <u>See</u> Exhibit C, August 5, 2003, Notice of Pre-termination.

6.     Pursuant to Plaintiff's request for a hearing, on August 12, 2003 Plaintiff was advised of a pre-termination hearing scheduled for August 14, 2003.  <u>See</u> Exhibit D, August 12, 2003, Notice of Pre-Termination Hearing.

7.     The August 14, 2003 pre-termination hearing was, however, canceled at the request of Plaintiff's counsel who had a scheduling conflict.  <u>See</u> Exhibit B, p. 72, l. 5-15.

8.     Plaintiff then obtained different counsel, Linda Hemphill, who required time to prepare for the pre-termination hearing.  <u>See</u> Exhibit B, p. 72, l. 20-25; p. 73, l. 1-12.

9.     Plaintiff subsequently terminated his relationship with Ms. Hemphill and retained his current counsel, Michael Mozes.  <u>See</u> Exhibit B, p. 73, l. 13-17.

10.    On November 4, 2003, with Plaintiff being represented by Mr. Mozes, the pre-termination hearing was held.  <u>See</u> Exhibit B, p. 74, l. 6-16.

11.    Prior to the pre-termination hearing Plaintiff was asked by corporate counsel for Defendant Coop to provide a letter stating what he did hour by hour on the weekend of the theft but he did not respond to the request until November 4, 2003.  <u>See</u> Exhibit B, p. 74, l. 6-13.

12.    At the pre-termination hearing when asked about the whereabouts of his Coop truck on the weekend of the theft, Plaintiff stated that he did not need to answer such questions and told Mr. Gonzales, the Coop manager, "you can kiss my ass."  <u>See</u> Exhibit B, p. 74, l. 17-25; p. 75, l. 1-18.

13.    Plaintiff did not necessarily believe that he needed to provide Defendant Coop with information regarding the theft.  <u>See</u> Exhibit B, p. 76, l. 9-11.

14.    On November 14, 2003 Defendant Coop issued a decision to terminate Plaintiff from employment for failing to cooperate in the investigation of the theft, being insubordinate and not

providing a satisfactory response to the inquiry into the theft. <u>See</u> Exhibit E, Notice of Termination.

15.    Board Policy 212 states that employees may be disciplined for cause which includes "insubordination; failure to comply with the lawful orders of a supervisor; including refusal to work overtime during a Cooperative declared emergency situation." <u>See</u> Exhibit F, Board Policy 212, para. 5.

16.    Ernesto Gonzales, manager of Defendant Coop, did not coordinate with law enforcement their investigation into the missing air compressor.   <u>See</u> Exhibit G, Deposition of Ernesto Gonzales, p. 13, l. 14-17.

17.    Mr. Gonzales' contact with the Sheriff's Department or the District Attorney's office as to how the investigation into the theft was proceeding was appropriate.  <u>See</u> Exhibit B, p. 91, l. 1-5.

18.    The true purpose of having Plaintiff take a polygraph examination regarding the theft was not to get him fired or to avoid compliance with the Employee Polygraph Protection Act. <u>See</u> Exhibit H, Deposition of Carl Armijo, p. 94, l. 12-25. p. 95, l. 1-2.

19.     Defendant Coop did not indicate to the District Attorney's Office
that it wanted polygraph examinations taken of Coop
employees.  <u>See</u> Exhibit H, p. 30, l. 22-25; p. 31, l. 1-7.

20.     No one with the management of Defendant Coop ever told the
District Attorney's Office who should be polygraphed.   <u>See</u>
Exhibit H, p. 95, l. 21-23.

21.     The District Attorney's Office did not conspire to deprive Plaintiff
of his constitutional rights.  <u>See</u> Exhibit H, p. 98, l. 1-12.

22.     The District Attorney's Office did not have any discussions with
Defendant Coop in which it was indicated that Defendant Coop
intended to use the polygraph results as a reason for
terminating Plaintiff.  <u>See</u> Exhibit H, p. 109, l. 22-25; p. 110, l.
1.

23.     The District Attorney did not have any discussions with
representatives of Defendant Coop regarding taking polygraph
examinations of employees.   <u>See</u> Exhibit I, Deposition of
Matthew Sandoval, p. 11, l. 21-22.

24.     The District Attorney did not have any conversations with
representatives of Defendant Coop that Defendant Coop wanted
the District Attorney's Office to take polygraph examinations of
Coop employees to be used in an employment dispute.  <u>See</u>
Exhibit I, p. 41, l. 10-13.

25.     The District Attorney did not have any belief that the information obtained in the criminal investigation of the compressor might be utilized for any other purposes.   <u>See</u> Exhibit I, p. 42, l. 20-23.

26.     Plaintiff has no personal information that Defendant Coop conspired with the Sheriff's Office and the District Attorney's Office.  <u>See</u> Exhibit B, p. 90, l. 9-18.

## II.     <u>Background of the Case</u>

In April 2003 a compressor belonging to Defendant Coop was stolen.  The theft was reported to the Sheriff's Department, which conducted a criminal investigation, working in conjunction with the District Attorney's Office.  The investigation included taking the polygraph examinations of Coop employees with access to the yard where the compressor was kept and the lock to the yard gate.  In the meantime, Defendant Coop learned of a witness who said the Plaintiff's Coop truck was at the scene of the theft on the weekend of the theft.  Plaintiff was asked to provide a detailed account of his activities on the weekend of the theft and was also advised that his termination was proposed.

Plaintiff obtained counsel who requested a pre-termination hearing.  The pre-termination hearing was scheduled, but at the request of Plaintiff's counsel, was cancelled due to a scheduling conflict.  Prior to rescheduling the pre-termination hearing, Plaintiff retained different counsel, Linda Hemphill, who indicated to Defendant Coop that she required additional materials to prepare for a pre-

termination hearing.   While discussions regarding those materials were taking place, Plaintiff terminated Ms. Hemphill as his attorney and retained new counsel, Michael Mozes.   A pre-termination hearing was then scheduled for November 4, 2003.   At the hearing Plaintiff refused to answer questions regarding the whereabouts of his Coop truck on the weekend of the theft, telling the Coop that it could "kiss his ass."

On November 14, 2003 Defendant Coop decided to terminate Plaintiff.   The reasons for Plaintiff's termination were his failure to cooperate in the investigation in the theft of the compressor, his insubordination and his failure to provide satisfactory responses to the inquiry into the theft.

On December 2, 2003 Plaintiff filed his Complaint entitled "Complaint for Damages from Breaches of Express and Implied Contracts, Retaliatory Discharge, Prima Facie Tort, Violations of the United States Constitution, Conspiracy, Violations of the Employee Polygraph Protection Act, Breach of the Covenant of Good Faith and Fair Dealing, Defamation, Negligence and Violations of the New Mexico Tort Claims Act," in the Fourth Judicial District Court for the State of New Mexico.   On December 29, 2003 Plaintiff's Complaint was removed to the United States District Court for the District of New Mexico.

Summary judgment is appropriately entered as to Plaintiff's causes of action for breach of an express and implied contract of employment, retaliatory discharge, breach of the covenant of good faith and fair dealing, prima facie tort, 42 U.S.C. Section 1983 Conspiracy, 42 U.S.C. Section 1983 Substantive Due

Process Property Interest, and 42 U.S.C. Section 1983 Substantive Due Process Liberty Interest as there are no genuine issues of material fact and Defendant Coop is entitled to judgment as a matter of law.

With respect to Plaintiff's causes of action for breach of an express and implied contract of employment, Plaintiff contends that the policies of Defendant Coop provided for a meaningful and speedy pre-termination hearing and termination only "for cause." <u>See</u> Complaint, para. 42. Plaintiff contends that the policies were breached in that he was denied a speedy and meaningful pre-termination hearing and that he was terminated without cause. <u>See</u> Complaint, para. 44. There is no genuine issue of fact with respect to whether cause existed for Plaintiff's termination. Defendant Coop believed that Plaintiff had information regarding the theft of Coop Property and proposed to terminate Plaintiff. At his pre-termination hearing Plaintiff refused to cooperate when he told those present for the Coop that they could "kiss my ass." Based upon these facts, cause existed for Plaintiff's termination due to insubordination as set forth in Board Policy 212. Further, a pre-termination hearing was timely scheduled; however, Plaintiff's attorney requested a continuance, which was granted. Plaintiff then obtained different counsel who required additional information prior to the hearing, and then terminated that counsel. When Plaintiff obtained his current counsel a pre-termination hearing was scheduled. Any delay in a pre-termination hearing was based solely upon the actions of Plaintiff.

With respect to Plaintiff's cause of action for retaliatory discharge, Plaintiff was not an at-will employee and thus may not pursue an action for the tort of retaliatory discharge under the public policy exception.

With respect to Plaintiff's cause of action for breach of covenant of good faith and fair dealing, Defendant Coop did not deprive Plaintiff of any benefit to which he was entitled under the express and implied contract of employment. Plaintiff was terminated for cause and was provided with a date for a speedy pre-termination hearing.  It was Plaintiff who delayed the pre-termination hearing.

With respect to Plaintiff's cause of action for prima facie tort, Plaintiff cannot satisfy the elements of this cause of action.  This tort requires a lawful act by the tortfeasor.  Plaintiff cannot claim that his termination was lawful and still recover for it, as this is inherently inconsistent.  Further, the tort does not allow for recovery if the action of the alleged tortfeasor was justified.  Here, based upon Plaintiff's insubordination, Defendant Coop had ample justification for Plaintiff's termination.

With respect to Plaintiff's cause of action for conspiracy brought pursuant to 42 U.S.C. Section 1983, Plaintiff contends that Defendant Coop conspired with the Mora County Sheriff's Office and the Fourth Judicial District Attorney's Office to cause the taking of an unlawful polygraph; however, there is no evidence to support a claim of conspiracy.  Conclusory allegations of conspiracy are insufficient.

Finally, with respect to Plaintiff's claims of violations of his substantive due process property and liberty interests, these claims as they relate to Defendant Coop, stem from the alleged conspiracy with the Sheriff's Department and the District Attorney's Office.  Specifically, for his property interest claim, Plaintiff contends that Defendant District Attorney's Office engaged in conduct (the taking of a polygraph examination) that unlawfully caused Plaintiff to lose his job and that Defendant Coop is liable because it acted "willfully in concert with the governmental actors."  See Complaint, para. 103.  As set forth above, there is no evidence to show that Defendant Coop acted "willfully in concert" with the governmental actors, rather, the decision to take polygraphs was made by the governmental actors as part of their criminal investigation and Defendant Coop had no authority to stop their actions.  With respect to the claim of a violation of a liberty interest, Plaintiff contends that his rights were violated as a result of the "unlawful and frivolous polygraph, commissioned unlawfully by the Cooperative. . . "  See Complaint, para. 110.  Again, there is no evidenced that Defendant Coop commissioned the polygraph examinations, rather the decision to take polygraphs was made by the District Attorney's Office, and thus this claim also fails.

III.   <u>Argument</u>

A.   <u>Plaintiff's Causes of Action for Breach of an Express or Implied Contract of Employment Fail as there is no Genuine Issue of Material Fact that Cause Existed for Plaintiff's Termination and that Plaintiff was provided with the Termination Procedures to which he was Entitled</u>

For Counts One and Two of his Complaint, Plaintiff asserts causes of action for breach of an express contract of employment and breach of an implied contract of employment respectively.   Specifically, Plaintiff alleges that Board Policies provided for employees to receive a meaningful and speedy pre-termination hearing and termination only for cause.   See Complaint, para. 42, 48.   Plaintiff contends that Defendant Coop breached the express and implied contract of employment by terminating him without cause and not providing him with a pre-termination hearing within three days of the notice of proposed termination.   See Complaint, para. 44, 50.

In New Mexico employment without a definite term is presumed to be at will.   Garrity v. Overland Sheepskin Co., 121 N.M. 710, 713, 917 P.2d 1382 (1996), citing Hartbarger v. Frank Paxton Co., 115 N.M. 665, 672, 857 P.2d 776, 783 (1993).   There are two recognized exceptions to the at-will employment rule:   (1) wrongful termination under facts disclosing unlawful retaliatory discharge;   or (2) where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge. Trujillo v. Northern Rio Arriba Electric Cooperative, Inc., 131 N.M. 607, 615, 41 P.3d 333 (2001), citing Lopez v. Kline, 124 N.M. 539, 953 P.2d 304 (N.M.App.1998).   A representation in an employee handbook or personnel policies may contractually modify the at-will presumption.   Hartbarger, 115 N.M. at 669, 857 P.2d at 780; Newberry, 108 N.M. at 426-27, 773 P.2d at 1233-34. In this case, Defendant Coop does not dispute Plaintiff's contention that he was

11

not an at-will employee; however, there are no facts to support a claim that either the express or implied contract of employment were breached.

First, with respect to Plaintiff's claim that he was terminated without cause, Defendant Coop learned of a witness who said that Plaintiff's Coop truck was seen at the scene of the theft on the weekend of the theft.  Pursuant to Coop policies, theft of Coop property is grounds for termination.  Based upon the witness account, Defendant Coop believed that Plaintiff had information about the theft and proposed Plaintiff's termination.   After being advised of the proposed termination, it is undisputed that Plaintiff, when asked about the whereabouts of his Coop truck that weekend, Plaintiff responded by saying that those present on behalf of the Coop could "kiss my ass."   Defendant Coop's Policy 212 sets forth conditions under which an employee can be terminated. One of these conditions is when an act of insubordination occurs.   Defendant Coop's request that Plaintiff answer questions regarding the theft was certainly lawful since, as an employer, it was entitled to inquire of its employees regarding the theft.   See TRW, Inc. v. Superior Court, 25 Cal.App.4[th] 1834, 1847, 31 Cal.Rptr.2d 460 (1994) (Employee has a duty to respond to legitimate employer questions relating to matters affecting his employment and the employer may impose sanctions against an uncooperative employee for refusing to answer such questions even if the answers would tend to implicate the employee in illegal conduct).   Plaintiff's refusal to answer questions satisfies the definition of insubordination set forth in policy 212.  See Wolny v. City of Bozeman, 30 P.3d

1085, (2001); <u>City of  Dallas v. Hamilton</u>, 132 S.W.3d 632 (Texas 2004); <u>Johnson v. Job Service of North Dakota</u>, 590 N.W.2d 877, 881 (N.D.1999).

Plaintiff was terminated for insubordination.   The undisputed evidence clearly demonstrates that he was insubordinate.  The Board Policies provide that insubordination is cause for termination.   Thus, there is no genuine issue of material fact that Defendant Mora complied with the express and implied contract of employment when it terminated Plaintiff for insubordination.  <u>See Cates v. Regents of New Mexico Institute of Min. & Tech.</u>, 124 N.M. 633, 954 P.2d 65 (1998) (Summary judgment properly granted when no issue of fact that termination of employee complied with policy in employee handbook).

With respect to the remaining portion of Plaintiff's breach of express and implied contract of employment in which he alleges that he was not provided with a speedy and meaningful pre-termination hearing, summary judgment is also appropriately granted.   On August 5, 2003 a notice of pre-termination hearing was hand delivered to Plaintiff.  <u>See</u> Exhibit D, Notice of Pre-Termination Hearing.  Pursuant to board policy 212 Plaintiff then had three days in which to request a pre-termination hearing.  Plaintiff made such a request and the hearing was scheduled; however, Plaintiff's counsel requested that the hearing be cancelled due to a scheduling conflict.  Plaintiff then retained different counsel who made various document requests.  Plaintiff then obtained his third counsel and the hearing took place.  Any delay in the pre-termination hearing was based

solely upon the actions of Plaintiff and his counsel.  As such, Plaintiff's claim of a breach of these portions of his express and/or implied contract fails.

      B.    <u>Plaintiff was not an At-Will Employee and therefore he may not Pursue an Action for the Tort of Retaliatory Discharge in Violation of Public Policy</u>

For his third cause of action Plaintiff contends that he was discharged in violation of the public policy of the State of New Mexico in that he was threatened with criminal charges as a means to compel the voluntary resignation of employment; that  public policy dictated that he be provided with a meaningful pre-termination hearing prior to dismissal; and that he was subjected to a polygraph examination without being advised of his right to counsel.  <u>See</u> Complaint, para. 53.  Summary judgment is appropriately granted as to this cause of action.

The tort of retaliatory discharge is a limited exception to the doctrine of at-will employment.  <u>Vigil v. Arzola</u>, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983).  In <u>Silva v. Alb. Assembly & Distrib. Freeport Warehouse Corp.</u>, 106 N.M. 19, 738 P.2d 513 (1987) the court recognized that the tort of retaliatory discharge would not extend as a matter of logic to employees who are not at-will.  Because "its genesis and sole application has been in regard to employment at-will," it is "unnecessary and inapplicable" when the employee is protected from wrongful discharge by an employment contract.  <u>Silva</u>, 106 N.M. at 20, 738 P.2d at 515.  Most recently in <u>Silva v. American Federation of State, County and Mun. Employees</u>, 131 N.M. 364, 365, 37 P.3d 81, 82 (2001), the

New Mexico Supreme Court reiterated that a plaintiff who is not an at-will employee may not pursue the tort of retaliatory discharge under the public policy exception.  It is undisputed that Plaintiff was not an at-will employee.  As such, Plaintiff may not assert a cause of action for retaliatory discharge.

C.      Plaintiff was not Deprived of the Benefit of his Express or Implied Contract of Employment and thus his Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails

For his fourth cause of action Plaintiff contends that Defendant Coop breached the covenant of good faith and fair dealing applicable to the employment contract by not performing in accordance with its contractual obligations under the policies.  See Complaint, para. 60.  Specifically, Plaintiff contends that Defendant Coop extorted Plaintiff to leave his job in the face of threatened criminal charges; delayed his pre-termination hearing to a date three months after the notice of the proposed termination; made a biased investigation; singled out Plaintiff as a thief when it had no credible evidence to that effect; and unlawfully used the offices of government agencies to achieve its purposes in terminating Plaintiff's employment.  See Complaint, para. 62.

The implied convent of good faith and fair dealing requires that neither party injure the rights of the other party to receive the benefit of their agreement. Dairyland Ins. Co. v. Herman, 124 N.M. 624, 954 P.2d 56 (1998).  The implied convent is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party.  Azar v. Prudential Ins. Co. of America, 133 N.M. 669, 68 P.3d 909 (Ct.App.2003).

There is no issue of fact that it was Plaintiff's attorneys who delayed the pre-termination hearing, and that Plaintiff told the Coop that it could "kiss my ass." Plaintiff's actions satisfy the definition of insubordination set forth in Defendant Coop's policies. Because the contract allowed for termination for insubordination, Defendant Coop's decision to terminate Plaintiff for this reason does not violate the covenant of good faith and fair dealing. See <u>TRW, Inc. v. Superior Court</u>, 25 Cal.App.4th 1834, 1847, 31 Cal.Rptr.2d 460 (1994) (Employee's refusal to answer questions regarding his employment constitutes just cause for termination); <u>see also Nuzzo v. Northwest Airlines, Inc</u>., 887 F.Supp. 28 (D.Mass.1995).

D. <u>Plaintiff cannot Satisfy the Elements of Prima Facie Tort</u>

Count Five of Plaintiff's Complaint is for prima facie tort. In this count Plaintiff alleges that Defendant Coop intentionally discharged him from employment, intentionally withheld information related to the termination action and intentionally strung out the pre-termination hearing with the intent to cause Plaintiff harm and did in fact cause him harm. Plaintiff contends that such action was not justified under the circumstances. <u>See</u> Complaint, para. 66, 67, 68 and 69.

Prima facie tort was recognized by the New Mexico Supreme Court in 1990 in <u>Schmitz v. Smentowski</u>, 109 N.M. 386 (1990). The elements of prima facie tort as adopted in <u>Schmitz</u> are: (1) an intentional, **lawful** act by the defendant; (2) an intent to injure the plaintiff; (3) injury to the plaintiff; and (4)

the absence of justification or insufficient justification for the defendant's acts. (Emphasis added).  Schmitz, 109 N.M. at 394.  Prima facie tort is intended to provide a remedy for persons harmed by intentional and malicious, **but otherwise lawful acts** that "fall outside of the rigid traditional intentional tort categories."  Schmitz, 109 N.M. at 394, 785 P.2d at 734.  Prima facie tort should be used to address wrongs that otherwise "escape categorization," Id. at 396, 785 P.2d at 736, but "should not be used to evade stringent requirements of other established doctrines of law." Id. at 398, 785 P.2d at 738.

As set forth in Schmitz v. Smentowski, 109 N.M. 386, 394, 785 P.2d 726 (1990), with respect to the intentional act forming the basis for the claim, such act must be a **lawful** act.  The basis of Plaintiff's cause of action for prima facie tort is his termination itself.   Thus, to succeed on this claim Plaintiff must concede that his termination was an intentional, **lawful** act by Defendant Coop. See Schmitz, 109 N.M. at 394.   Clearly, it is inherently inconsistent to allow Plaintiff to seek damages for his termination while at the same time conceding that the termination was a lawful act.  Further, there is no evidence to show an intent to injure Plaintiff; the evidence shows only an intent to terminate Plaintiff. See Hill v. Cray Research, Inc., 864 F.Supp. 1070 (D.N.M.1991) (Plaintiff carries heavy burden of proving actual intent on defendant's part to injure plaintiff, not merely to do the act purportedly resulting in the claimed injury).  In addition, as set forth in Schmitz, Plaintiff must show that the Defendant Coop acted without

justification.  Schmitz, 785 P.2d at 735.  As stated previously, it is undisputed that Plaintiff refused to answer questions posed to him by his employer.

Because Plaintiff cannot satisfy the required elements of this cause of action, summary judgment is appropriately granted.

### E.  There is No Evidence to Support a Claim of Conspiracy

Plaintiff contends in Count X of his Complaint that Defendant Coop conspired with the Mora County Sheriff's Department and the District Attorney's Office to "cause the taking of an unlawful polygraph".  See Complaint, para. 96. This claim of conspiracy is brought pursuant to 42 U.S.C. Section 1983.  A Section 1983 conspiracy is defined as a "combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.  Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988); see also Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir.1973).  While allegations of conspiracy may form the basis of a Section 1983 claim, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  Tonkovich v. Kansas Bd. Of Regents, 159 F.3d 504, 533 (10th Cir.1998), citing Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir.1994); see also Montgomery v. City of Ardmore, 365 F.3d 926 (10th Cir. 2004).  Conclusory allegations of conspiracy are insufficient to state a valid 1983 claim.  Id.

Here, Plaintiff's claim of conspiracy fails as there is simply no evidence that Defendant Coop conspired with anyone.   Ernesto Gonzales, manager of the Coop, testified at his deposition that he did not coordinate the law enforcement investigation into the missing air compressor.   See Exhibit G, Deposition of Ernesto Gonzales, p. 13, l. 14-17.   Carl Armijo, investigator for the District Attorney's Office testified that the true purpose of having Plaintiff take a polygraph examination regarding the theft was not to get Plaintiff fired or to avoid compliance with the Employee Polygraph Protection Act and that no one at the Coop ever told the District Attorney's Office who should be polygraphed.   See Exhibit H, Deposition of Carl Armijo, p. 94, l. 12-25; p. 95, l. 21-23.   In fact, Defendant Coop never indicated to the District Attorney's Office that it wanted polygraph examinations taken of Coop employees.   See Exhibit H, p. 30, l. 22-25; p. 31, l. 1-7. The District Attorney's Office never received an indication from Defendant Coop that it intended to use the polygraph results as a reason for terminating Plaintiff.   See Exhibit H, p. 109, l. 22-25; p. 110, l. 1.   The District Attorney himself did not have any conversations with representatives of Defendant Coop that Defendant Coop wanted the District Attorney's Office to take polygraph examinations of Coop employees to be used in an employment dispute.   See Exhibit I, Deposition of District Attorney Matthew Sandoval, p. 41, l. 10-13.   Moreover, at his own deposition, Plaintiff testified that he has no personal information that Defendant Coop conspired with the Sheriff's Office and the District Attorney's Office.   See Exhibit B, p. 90, l. 9-18.

19

Based upon this sworn testimony, the claim of conspiracy fails as there is no evidence beyond Plaintiff's conclusory allegations to demonstrate any conspiracy "to cause the taking of an unlawful polygraph."

> F. <u>Plaintiff's Claims of Constitutional Violations are Premised upon a Conspiracy between Defendant Coop and Defendant District Attorney's Office and the Sheriff's Department and because the Conspiracy Claim Fails, so do the Claims for Constitutional Violations</u>

In Count XI of his Complaint, Plaintiff alleges that Defendant Coop violated his substantive due process property interest because it acted "willfully in concert" with the Sheriff's Department and District Attorney's Office in engaging in conduct that would cause a deprivation of a protected constitutional right.  <u>See</u> Complaint, para. 103.  There is no claim by Plaintiff that either the Sheriff's Department or the District Attorney's Office was not allowed to perform a polygraph test on Plaintiff, thus the actions of these defendants in taking the polygraph examination is not at issue.  Further, as demonstrated above, there is no evidence to show that Defendant Coop requested that the polygraph examination be taken.  As such, any claim that Defendant Coop acted willfully in concert with those defendants to engage in behavior that would cause a deprivation of a constitutional right necessarily fails.

The same holds true with respect to Count XII of Plaintiff's Complaint in which he alleges that because of the polygraph examination "commissioned unlawfully by the Cooperative," Plaintiff was removed from his position.  <u>See</u> Complaint, para. 110.  As set forth above, there is no evidence that Defendant

Coop "commissioned" the polygraph examination, rather the decision to take polygraph examinations was made by the District Attorney's Office.  As such, any claim that Defendant Coop violated Plaintiff's liberty interest via the polygraph examination fails since there is no evidence that Defendant Coop ordered the examination.

IV.     <u>Conclusion</u>

For the reasons set forth herein, Defendant Coop prays for an order of this Court granting judgment in its favor as to Counts I, II, III, IV, V, X, XI and XII; for its attorneys' fees and costs in defending this matter; together with such other and further relief as the Court deems just and proper.

Respectfully Submitted,

BEALL & BIEHLER

By:   **_VIA E-FILE ONLY_**

GREGORY L. BIEHLER
Attorneys for Defendants
Mora-San Miguel Electric
Cooperative, Inc., Ernesto
Gonzales, Levi Alcon and
Yvette Alcon
6715 Academy Road NE
Albuquerque, NM  87109
(505) 828-3600
(505) 828-3900 (FAX)

I hereby certify that a true and correct

copy of the foregoing was mailed to:


Michael E. Mozes
Law Offices of Michael E. Mozes, P.C.
5732 Osuna Road NE
Albuquerque, NM 87109

Jerry A. Walz
12009 Highway 14 N.
Albuquerque, NM 87008-9405

David A. Rammelkamp
Shari L. Cordova
KELLY, RAMMELKAMP & MUEHLENWEG, P.A.
P.O. Box 25127
Albuquerque, NM 87125-5127


this 3rd day of September, 2004.


**    VIA E-FILE ONLY  **
GREGORY L. BIEHLER