IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DON ABREU,

      Plaintiff,

vs.                                                        No. CIV 03-1468 RB/RHS

MORA-SAN MIGUEL ELECTRIC
COOPERATIVE, INC., MORA COUNTY
SHERIFF'S OFFICE, FOURTH JUDICIAL
DISTRICT ATTORNEY'S OFFICE, LUCERO
PROFESSIONAL SERVICES, LTD.,
CARL ARMIJO, in his official and individual
capacities, ERNESTO GONZALES,
LEVI ALCON, and YVETTE ALCON,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Mora-San Miguel Electric Co-operative, Inc's ("Co-op's") Motion for Judgment on the Pleadings as to Count VI (Doc. 33), filed on June 28, 2004, and Defendants Carl Armijo and the Fourth Judicial District Attorney's Office's ("DAO Defendants'") Motion for Judgment on the Pleadings (Doc. 41), filed on August 5, 2004. Jurisdiction is founded upon 28 U.S.C § 1331. Having reviewed the submissions of the parties and the relevant law, the Court finds that the Co-op's motion should be denied and that the DAO Defendants' motion should be granted in part. The remaining claims against the DAO Defendants will be addressed in the context of their pending motion for summary judgment in a separate Memorandum Opinion and Order.

**I. Background.**

The facts related below represent a summary of the complaint. In 1977, the Co-op hired Plaintiff ("Abreu") as an apprentice lineman. (Compl. ¶ 15.) Throughout his employment with the Co-op, Abreu performed his duties in a better than satisfactory fashion. (Compl. ¶ 16.) In 2003, Abreu had risen to the supervisory position of line superintendent. (*Id.*)

During the weekend of April 11-13, 2003, a compressor owned by the Co-op was allegedly stolen. (Compl. ¶ 16.) Abreu helped his daughter move that weekend and spent most of April 13, 2003, which was Palm Sunday, with his family. (Compl. ¶ 18.) The mileage sheets for the Co-op truck Abreu drove show that he arrived home on Friday, parked the truck, and did not use the truck during the weekend. (Compl. ¶ 19.)

The Co-op investigated the disappearance of the compressor. (Compl. ¶ 20.) After the Co-op's internal investigation failed to produce any leads, the matter was turned over to the Mora County Sheriff's Office ("MCSO") and the Fourth Judicial District Attorney's Office's ("DAO"). (*Id.*) These governmental agencies questioned a number of Co-op employees, including Abreu, in their investigations of the matter. (*Id.*) The governmental investigations failed to produce any suspects. (*Id.*)

During Summer 2003, the Co-op, though Ernesto Gonzales, contacted Eric Lucero of Lucero Professional Services and inquired about performing polygraph examination on a number of Co-op employees. (Compl. ¶ 21.) Lucero explained that he could not lawfully polygraph the employees under the circumstances described by Gonzales. (*Id.*)

When the Co-op understood that Lucero could not lawfully polygraph its employees, the Co-op through Gonzales, contacted the MCSO and Carl Armijo, an investigator with the DAO. (Compl.

¶ 22.) The three put together a plan whereby the Co-op could obtain polygraphs of its employees. (*Id.*) The MCSO, the DAO, and the Co-op agreed that it would use the offices and authority of the DAO in order to take the polygraphs. (*Id.*) Although the official investigation relating to the missing compressor had ended, the MCSO and the DAO agreed to sponsor the polygraphs for the sole unlawful purpose of allowing the Co-op to obtain polygraphs of its employees. (*Id.*)

On July 10, 2003, Abreu attended a meeting where he was advised by Gonzales that certain Co-op employees would undergo polygraphs the following day with respect to the theft of the compressor. (Compl. ¶ 24.) On July 11, 2003, Lucero administered polygraph examinations to four Co-op employees, including Abreu. (Compl. ¶ 23.) At the direction of the Co-op, Lucero asked Abreu relevant questions that were not asked of the other employees who were given polygraph tests. (Compl. ¶ 25.) The tailored questions were improper and intended to justify the unlawful decision to terminate Abreu's employment. Lucero, the Co-op, the DAO, and that MCSO collaborated in providing false evidence of criminal behavior later used to terminate Abreu. (*Id.*)

Lucero informed the Co-op that Abreu failed to pass the polygraph test. (Compl. ¶ 26.) The polygraphs were conducted without the required objectivity and compliance with standards. (*Id.*) Lucero was induced by the Co-op to target Abreu and Mark Fernandez during the taking of the polygraphs. (*Id.*) Gonzales predicted that Abreu and Fernandez would fail. (*Id.*) The polygraphs did not comply with the provisions of the Employee Polygraph Protection Act ("EPPA"). (*Id.*)

Shortly before or after the Co-op took the polygraphs, Levi and Yvette Alcon reported to the Co-op that Ms. Alcon had seen Abreu's company truck at the Mora location of the Co-op on the evening of Sunday, April 13, 2003. (Compl. ¶ 27.) Ms. Alcon stated that she saw the Abreu truck inside the yard, that she saw the truck exit the yard, and that she saw the truck pulling something

when it left the yard. (*Id.*) These statements were false and intended to deprive Abreu of his employment. (*Id.*)

On August 5, 2003, the Co-op notified Abreu by letter that it proposed to terminate his employment on the basis of the polygraph and the Alcon statement. (Compl. ¶ 28.) Two days prior to delivery of the letter, Nicolas Leger, the Co-op's attorney, told Abreu that if Abreu resigned, the Co-op would not pursue criminal charges. (Compl. ¶ 29.) Abreu refused to resign and told Leger and Gonzales that he had done nothing criminal. (*Id.*)

The policies of the Co-op and the collective bargaining agreement required the Co-op to provide Abreu with a pre-termination hearing within three days of an employee requesting a hearing. (Compl. ¶ 30.) Abreu requested a hearing on August 5, 2003. (*Id.*) The Co-op made no attempt to schedule a hearing until August 12, 2003, when it advised Abreu that the hearing would be held on August 14, 2003. (*Id.*) Abreu's former attorney, Arthur Bustos, notified the Co-op that he could not attend the hearing and asked that it be rescheduled at a later date. (*Id.*)

On August 18, 2003, Leger responded to Bustos that the hearing would be rescheduled as soon as possible and that Abreu was placed on administrative leave without pay pending the hearing. (Compl. ¶ 31.) The Co-op delayed the pre-termination hearing for more than two-and-a-half months. (Compl. ¶ 32.) Abreu could not apply for unemployment or seek other employment during this period. (*Id.*)

The pre-termination hearing was held on November 4, 2003. (Compl. ¶ 34.) The Co-op failed to provide Abreu with the required summary of facts supporting the proposed termination. (Compl. ¶ 33.) The hearing was a sham because the Co-op did not provide any information to Abreu and did not afford him a full and fair opportunity to address the claims supporting the termination. (Compl.

¶ 34.) By letter dated November 14, 2003, the Co-op terminated Abreu's employment. (Compl. ¶ 37.)

Abreu filed his complaint in state court on December 2, 2003, asserting (1) breach of an express employment contract ("Count I"); (2) breach of an implied employment contract ("Count II"); (3) retaliatory discharge ("Count III"); (4) breach of the covenant of good faith and fair dealing ("Count IV"); (5) prima facie tort ("Count V"); (6) violations of the Employee Polygraph Protection Act, 29 U.S.C. § 2001 ("Count VI"); defamation against Gonzales, Yvette Alcon, and Levi Alcon ("Count VII"); (8) defamation per se against Gonzales and Yvette Alcon ("Count VIII"); (9) conspiracy to violate constitutional rights against Armijo, the DAO, and MCSO under the New Mexico Tort Claims Act ("Count IX"); (10) conspiracy to violate constitutional rights against the Co-op, the DAO, and MCSO under §1983 ("Count X"); (11) violation of substantive due process (property interest) against the Co-op, the DAO, and MCSO under §1983 ("Count XI"); (12) violation of substantive due process (liberty interest) against the Co-op, the DAO, and MCSO under §1983 ("Count XII"); (13) violation of procedural due process against the Co-op, the DAO, and MCSO under §1983 ("Count XIII"); and (14) negligence against Lucero ("Count XIV").

On December 29, 2003, the DAO defendants removed the action to this court pursuant to 28 U.S.C.§ 1441. The parties have stipulated to dismissal of the claims against the MCSO, Ernesto Gonzales and Levi Alcon. The Co-op has filed a motion for judgment on the pleadings as to Count VI, and the DAO Defendants have filed a motion for judgment on the pleadings as to all claims.

**II. Standard.**

When considering a FED. R. CIV. P. 12(c) motion for judgment on the pleadings, the court

5

applies the standard for a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). *Callery v. U.S. Life Ins.*, 392 F.3d 401, 404 (10th Cir. 2004). Such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6). The court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000). Abreu has attached a deposition excerpt to his response to the DAO Defendants' motion. I expressly decline to consider any matter outside the pleadings in the context of this motion, and therefore, I need not convert the motion to a motion for summary judgment. *See* FED. R. CIV P. 12(c).

**III. Discussion.**

**A.     The Co-op's Motion for Judgment on the Pleadings as to Count VI.**

In Count VI, Abreu alleged violation of the Employee Polygraph Protection Act, 29 U.S.C. § 2001 (EPPA). The Co-op contends that it is entitled to judgment as a matter of law on this claim because Abreu alleges that the Co-op is a state actor for purposes of §1983.

EPPA does not apply to governmental employers. 29 U.S.C. § 2006(a). In Count VI, Abreu alleges that the Co-op is a private employer under the provisions of EPPA. With respect to the §1983 claims in Counts X, XI, XII, and XIII, Abreu alleges that the Co-op became significantly integrated with county and state actors so as to act under color of state law. In certain instances, a private entity may qualify as a state actor under §1983. *See Dixon v. Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990),

Rule 8 of the Federal Rules of Civil Procedure expressly permits a party to assert alternative claims. FED. R. CIV. P. 8(e)(2). Inconsistent pleadings are permissible and a party may utilize discovery to winnow theories of liability. *DePaepe v. General Motors Corp.*, 141 F.3d 715, 719 (7th Cir. 1998). The Co-op cites no authority to the contrary. Because Abreu is entitled to plead his claims in the alternative, the Co-op's motion for judgment on the pleadings will be denied.

**B.     The DAO Defendants' Motion for Judgment on the Pleadings.[1]**

The DAO Defendants argue that the DAO is not a person within the meaning of §1983. To maintain an action under section 1983, Abreu must establish that a "person" acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution. 42 U.S.C. § 1983. It is well established that state agencies such as the District Attorney's Office are not "persons" amenable to suit within the meaning of §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Therefore, the §1983 claims, which are alleged in Counts X, XI, XII, and XIII, will be dismissed as to the District Attorney's Office.

In Count IX, Abreu alleges that Armijo, the DAO, and MCSO conspired to violate Abreu's constitutional rights under state law. The DAO Defendants argue that the New Mexico Tort Claims Act ("NMTCA") has not waived sovereign immunity for such a claim. The NMTCA provides that governmental entities and public employees acting within the scope of duty are immune from tort suits unless there is a specific waiver of that immunity set forth under the Act. *Weinstein v. City of Santa Fe*, 121 N. M. 646, 649, 916 P.2d 1313, 1316 (1996). Any provision purporting to waive governmental immunity must be strictly construed. *Armijo v. Dept of Health & Environment*, 108

---

[1] Abreu's contention that the DAO Defendants waived the arguments raised in this motion is unfounded. The DAO Defendants raised the defenses in their answer and their motion for judgment on the pleadings was filed prior to the expiration of the motion deadline.

N.M. 616, 618, 775 P.2d 1333, 1335 (Ct. App. 1989).

In response to this argument, Abreu contends that NMSA 1978, §41-4-12 provides for a waiver of immunity for the investigative activities of Armijo and the DAO. Section 41-4-12 waives immunity for:

> liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978, §41-4-12 .

The NMTCA defines a law enforcement officer as "a full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes . . ." NMSA 1978, §41-4-3(D). The complaint does not allege that the DAO Defendants hold persons in custody, maintain public order, or make arrests for crimes. In his response brief, Abreu argues that Armijo qualified as a law enforcement officer because he investigated the alleged theft. Such conduct is not encompassed by the statutory definition of § 41-4-3(D). *See Dunn v. McFeeley*, 127 N.M. 513, 519, 984 P.2d 760, 766 (Ct. App. 1999); (medical investigator not law enforcement officer); *Baptiste v. City of Las Cruces*, 115 N.M. 178, 180-81, 848 P.2d 1105, 1107-08 (Ct. App.1993) (animal control officer not law enforcement officer). Section 41-4-12 does not apply to Armijo and the DAO because they are not law enforcement officers within the meaning of Section 41-4-3(D). *Dunn*, 127 N.M. at 519, 984 P.2d at 766; *Coyazo v. State*, 120 N.M. 47, 50, 897 P.2d 234, 237 (Ct. App. 1995). The motion for judgment on the pleadings will be granted as to Count IX.

The DAO Defendants move for judgment on the pleadings as to Counts I, II, III, IV, V, and VI. Abreu has failed to respond to these assertions. Indeed, the complaint does not name them as defendants in these counts. To the extent that the complaint purports to assert Counts I, II, III, IV, V, and VI against the DAO Defendants, these allegations will be dismissed for failure to state a claim. The DAO Defendants' assertions that Armijo is entitled to qualified immunity and that Abreu has not presented specific facts to establish conspiracy under §1983 will be addressed in the context of the pending motion for summary judgment.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Co-op's Motion for Judgment on the Pleadings as to Count VI (Doc. 33), filed on June 28, 2004, is **DENIED**.

**IT IS FURTHER ORDERED** that the DAO Defendants' Motion for Judgment on the Pleadings (Doc. 41), filed on August 5, 2004, is **GRANTED IN PART AS DESCRIBED HEREIN.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**